T.C. Summary Opinion 2002-61


UNITED STATES TAX COURT


OLDE RALEIGH REALTY CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1674-00S.                    Filed May 29, 2002.


<u>Edgar H. Bridger</u>, for petitioner.

<u>Linda P. Azmon</u>, for respondent.


PAJAK, <u>Special Trial Judge</u>:  This case is before the Court on a petition for a redetermination of a Notice Of Determination Concerning Worker Classification Under Section 7436.  Unless otherwise indicated, section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Sec. 7436(c).

On November 10, 1999, respondent issued to petitioner a Notice of Determination Concerning Worker Classification Under Section 7436 (notice of determination). In the notice of determination, respondent determined: (1) William Henderson (Mr. Henderson) was an employee of Olde Raleigh Realty Corporation (petitioner) for the tax periods ending December 31, 1995 and 1996, for purposes of Federal employment taxes, and (2) petitioner was not entitled to relief from these taxes as provided by section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885 (section 530 of 1978 Act). (For convenience, we sometimes use the term "employment taxes" to refer to taxes under the Federal Insurance Contributions Act (FICA-Social Security taxes) and Federal Unemployment Tax Act (FUTA-Unemployment taxes)).

The proposed Federal employment taxes, additions to tax, and related penalties were detailed in the notice of determination as follows:

| Year | Tax | Tax | Addition to tax Sec. 6656 | Accuracy-related penalty Sec. 6662(a) |
|------|-----|-----|---------------------------|----------------------------------------|
| 1995 | FICA | $10,105.01 | $505.25 | $2,021.00 |
| 1995 | FUTA | 434.00 | 43.40 | 86.80 |
| 1996 | FICA | 11,926.09 | $596.30 | 2,385.22 |
| 1996 | FUTA | 434.20 | 43.42 | 86.84 |

After concessions by petitioner that Mr. Henderson should be legally classified as an employee of petitioner for purposes of Federal employment taxes and that petitioner is not entitled to relief under section 530 of the 1978 Act, the issues for decision

are:  (1) Whether certain payments made by petitioner to, or on behalf of, Mr. Henderson should be recharacterized as wages subject to Federal employment taxes; (2) whether petitioner is liable for the additions to tax under section 6656; and (3) whether petitioner is liable for the penalties under section 6662(a).

Some of the facts in this case have been stipulated and are so found.

Petitioner is an S corporation that was incorporated in North Carolina on or about May 7, 1991.  At the time the petition was filed, petitioner's principal place of business was in Raleigh, North Carolina.  Petitioner operates a brokerage/real estate company that is the sole source of its income.  Since petitioner's incorporation and all during 1995 and 1996, Mr. Henderson has owned 100 percent of petitioner's stock and has been the president of petitioner.

Mr. Henderson worked approximately 32 hours per week for petitioner during 1995 and 1996.  During the years in issue, Mr. Henderson performed many services for petitioner.  Mr. Henderson negotiated with sellers of real property, reviewed development budgets, reviewed development progress, assisted in the negotiation of sales of lots to residential builders, reviewed financial operations, arranged financing for joint ventures, assisted in organizing and setting up development entities,

solicited clients and business on behalf of petitioner, entered into verbal and written agreements on behalf of petitioner, oversaw petitioner's finances, managed petitioner, hired and fired independent contractors on behalf of petitioner, made investment decisions on behalf of petitioner, entered into development projects on behalf of petitioner, and had signatory authority over petitioner's bank accounts.

During 1995, petitioner recognized that the following persons were employees:  B.J. Stanfield, office assistant; Brenda M. Gray, office assistant; and Michael Giaquinto, development troubleshooting/assistant to Mr. Henderson.  Petitioner timely filed Forms 941, Employer's Quarterly Federal Tax Return, for each quarter in 1995 and 1996.  Petitioner also timely filed Forms 940-EZ, Employer's Annual Federal Unemployment Tax Return, for both 1995 and 1996.

Petitioner did not issue Forms W-2, Wage and Tax Statement, or Forms 1099-MISC, Miscellaneous Income, to Mr. Henderson in 1995 or 1996.

During 1995, petitioner paid from its own bank account $96,766 of Mr. Henderson's personal expenses.  (All dollar amounts are rounded off in this opinion.)  Likewise, during 1996 petitioner paid from its own bank account $143,221 of Mr. Henderson's personal expenses.

In the notice of determination, respondent based the FICA

and FUTA tax liabilities on payments made by petitioner for Mr. Henderson's personal expenses in the amount of $86,766 and $143,148 for 1995 and 1996, respectively. The record is silent as to why the amounts in the notice of determination are $10,000 and $73 less than the amounts of Mr. Henderson's personal expenses paid by petitioner for 1995 and 1996, respectively. These differences appear from time to time, but we shall decide the case based on respondent's notice of determination.

On Forms 1120S, U.S. Income Tax Return for an S Corporation, petitioner reported ordinary income from its trade or business for 1995 and 1996 of $217,985 and $380,559, respectively. Petitioner reported these amounts of ordinary income as Mr. Henderson's share of ordinary income from trade or business activities on Schedules K-1 (Schedules K-1), Shareholder's Share of Income, Credits, Deductions, etc., filed with each Form 1120S for 1995 and 1996.

Mr. Henderson and his wife timely filed Forms 1040, U.S. Individual Income Tax Return, for 1995 and 1996. They reported the $217,985 and $380,559 of ordinary income from the Schedules K-1 on their returns for 1995 and 1996, respectively.

On or about December 3, 1992, Mr. Henderson filed a petition with the United States Bankruptcy Court, Eastern District of North Carolina (Bankruptcy Court), seeking relief from personal indebtedness under Chapter 7 of the Bankruptcy Code. On or about

March 19, 1993, Mr. Henderson received a discharge from indebtedness from the Bankruptcy Court.

Respondent contends that amounts paid by petitioner to, or on behalf of, Mr. Henderson for personal expenses in 1995 and 1996 constitute wages which subject petitioner to Federal employment taxes on those wages. Petitioner argues that the amounts the corporation paid with respect to Mr. Henderson's personal expenses during the years in issue were funds advanced by Mr. Henderson to petitioner pursuant to an oral agreement between the corporation and Mr. Henderson. Petitioner also contends that the amounts used by the corporation for these payments were advanced by Mr. Henderson to petitioner in a "trust" capacity. Petitioner contends that the oral agreement was a means for Mr. Henderson to deposit funds with petitioner and then have petitioner pay Mr. Henderson's personal expenses, thus avoiding the reach of his creditors. In the alternative, petitioner argues that the payments of Mr. Henderson's personal expenses represented repayment of loans made by Mr. Henderson to the corporation.

Section 7491 is not applicable in the instant case because the examination commenced before July 22, 1998. Petitioner bears the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

We note that this Court has jurisdiction to determine

whether the Secretary's determination of worker classification is correct and to determine the amount of employment taxes, additions to tax, and penalties provided by Chapter 68 of Subtitle F (sections 6651 through 6751). Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 267-268 (2001).

Sections 3111 and 3301 impose FICA and FUTA taxes on employers for wages paid to their employees. Wages for FICA and FUTA purposes are defined as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash" with exceptions not applicable in this case. Secs. 3121(a), 3306(b). Generally, the form of payment is immaterial. Secs. 31.3121(a)-1(c) and (d), 31.3306(b)-1(b), (e), Employment Tax Regs. Payment can be made in cash or something other than cash. Secs. 31.3121(a)-1(c) and (d), 31.3306(b)-1(b), (e), Employment Tax Regs. Thus, "an officer who performs substantial services for a corporation and who receives remuneration in any form for those services is considered an employee whose wages are subject to Federal employment taxes." Veterinary Surgical Consultants, P.C. v. Commissioner, 117 T.C. 141, 145 (2001).

Petitioner sought to prove the existence of an oral agreement between the corporation represented by its president, Mr. Henderson, and its sole shareholder, Mr. Henderson. In essence, petitioner seeks to prove an oral agreement by Mr.

Henderson with himself.  Petitioner cites an 1835 North Carolina opinion containing dicta to the effect that an oral agreement may be proven by "any competent witness, who was present at the time, or who heard the defendant admit the existence of such contract." Pender v. Forbes, 18 N.C. 250 (1835).  Whether or not this is the law, petitioner provided no witness, much less a competent witness, to prove such an oral contract.  Mr. Henderson, the president of petitioner, did not testify at trial.  Mr. Henderson, as an individual, did not testify.  Nor did any of petitioner's other officers or employees testify as to the alleged oral agreement and its execution.

Petitioner's sole witness was C. Gilbert Smith (Mr. Smith), petitioner's certified public accountant.  Mr. Smith offered no testimony as to the existence of the purported oral agreement between petitioner and Mr. Henderson.  Mr. Smith did not testify that he was present at the time of the purported oral agreement. Mr. Smith testified only about how petitioner's books reflected a purported arrangement.  Petitioner provided no objective records to evidence the execution of the oral agreement: no deposit slips, no canceled checks, no bank statements, and no other evidence of receipt by petitioner of funds from Mr. Henderson to act in a "trustee" capacity in accordance with the alleged oral agreement.

The record before this Court contains no evidence that,

during the years in issue, an oral agreement existed between petitioner and Mr. Henderson for him to advance funds to the corporation and for the corporation to pay his personal expenses. Accordingly, we hold that there was no oral agreement between petitioner and Mr. Henderson and that petitioner has failed to show that amounts withdrawn from the corporation to pay Mr. Henderson's personal expenses were pursuant to a "trust" arrangement.

Petitioner argues in the alternative that the corporation's payment of Mr. Henderson's personal expenses represented repayments of loans made between the two parties. Respondent argues that any funds advanced by Mr. Henderson were contributions to capital and any payment of Mr. Henderson's personal expenses constitutes the payment of wages to an employee.

In resolving the question of whether a payment is debt or equity for Federal tax purposes, each case must be decided on its own facts. Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 285 (1990).

Courts have identified and considered various factors in determining whether a payment is debt or equity. Some of the factors considered are: The names given to the certificates evidencing the indebtedness, presence or absence of a fixed maturity date, source of payments, right to enforce payments,

participation in management as a result of the advances, status of the advances in relation to regular corporate creditors, intent of the parties, identity of interest between creditor and stockholder, thinness of capital structure in relation to debt, ability of corporation to obtain credit from outside sources, use to which advances were put, failure of debtor to repay, and the risk involved in making advances. Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980).

The identified factors are not equally significant, and no single factor is determinative or relevant in each case. Id. at 493-494. This Court has stated that the ultimate question is whether there was "a genuine intention to create a debt, with a reasonable expectation of repayment, and did that intention comport with the economic reality of creating a debtor-creditor relationship?" Litton Bus. Sys., Inc. v. Commissioner, 61 T.C. 367, 377 (1973). However, without evidence substantiating the existence of a bona fide debt, a mere declaration of intent is not determinative. Cordes v. Commissioner, T.C. Memo. 1994-377.

Petitioner contends that, during the years in issue, Mr. Henderson deposited moneys in the corporation which were loans. Mr. Smith testified that the alleged deposits made by Mr. Henderson to petitioner totaled $98,894 in 1995 and $170,000 in 1996. Petitioner had two corporate receipts totaling $8,000 and a promissory note executed between petitioner and Mr. Henderson

in the amount of $9,000 as evidence of the existence of the purported loans made by Mr. Henderson. Petitioner had a corporate resolution dated December 31, 1995, which acknowledged receipt by the corporation of alleged loans from Mr. Henderson during 1995 totaling $18,575. Petitioner also had a similar corporate resolution dated December 31, 1996, which acknowledged receipt of alleged loans from Mr. Henderson in 1996 totaling $186,800. Mr. Smith testified that petitioner maintained a loan account titled "Loans Payable-W.R. Henderson". He also testified that charges were made against the loan account for "expenses, of a personal nature, such as mortgage payment on [Mr. Henderson's] home, contributions to charities, credit card payments,...and various other personal expenses." During 1995 and 1996, the charges against the "Loans Payable-W.R. Henderson" account totaled $96,766 and $143,421, respectively.

Mr. Henderson was president and sole shareholder of petitioner during the years in issue. The fact that the debtor and creditor are related parties does not preclude the existence of a bona fide debt. Calumet Indus., Inc. v. Commissioner, supra at 286. However, transactions between closely held corporations and their shareholders are examined with special scrutiny. Elec. & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1339 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974).

In Smith v. Commissioner, T.C. Memo. 1995-410, payments made

by the corporation to pay the personal expenses of its sole shareholder were held not to be loan repayments. In that case, the taxpayer did not testify, and the only evidence of a loan was the accountant's testimony. There were no loan agreements or other documentary evidence relating to the alleged loans. Id.

Like Smith v. Commissioner, supra, petitioner has not convinced this Court that Mr. Henderson made bona fide loans to the corporation during the years in issue. In this case, neither Mr. Henderson nor any other officer or employee of petitioner testified as to the existence of any such loans. Petitioner primarily relies on the testimony of Mr. Smith, the corporation's accountant. Mr. Smith testified that, other than the $9,000 promissory note, there were no written agreements or notes evidencing additional loans. Specifically, Mr. Smith testified that the only record of the purported loans indicated by the 1995 and 1996 corporate resolutions were found in petitioner's own general ledger. Such records, absent objective evidence of a loan, will be given little weight. Dixie Dairies Corp. v. Commissioner, supra at 495. Petitioner provided no other receipts, bank statements, or canceled checks evidencing the receipt by the corporation of the amounts purported to have been loaned by Mr. Henderson. Mr. Smith testified that the purported loans evidenced by the 1995 and 1996 corporate resolutions did not provide for interest, repayment terms, or enforcement rights

in Mr. Henderson.  Additionally, there were no set maturity dates or security pledged for the alleged loans.  Mr. Smith also testified that no bank would consider making a loan to petitioner.

As to the lone $9,000 promissory note, whether it represents a legitimate debt instrument is irrelevant to the disposition of whether the payments of Mr. Henderson's personal expenses by petitioner are repayments of loans made between the two parties. Petitioner has shown no evidence that any of the personal expenses paid on behalf of Mr. Henderson represented repayment of the $9,000 promissory note.  The $9,000 promissory note has a "Satisfaction" clause reserved at the top of the promissory note so that the date on which the promissory note was satisfied in full could be documented by date and signature.  Nothing on the face of the $9,000 promissory note indicates that any of the payments of Mr. Henderson's personal expenses were in satisfaction of the alleged debt.

In this case, there is no objective evidence that any of the personal expenses paid by petitioner on behalf of Mr. Henderson represented repayment of loans between Mr. Henderson and the corporation.  Accordingly, we hold that none of the personal expenses paid by petitioner on behalf of Mr. Henderson represented repayment of loans made by him to the corporation.

This Court must now decide whether the payments of Mr.

Henderson's personal expenses by petitioner were compensation or constructive dividends to him. If the payments are constructive dividends, the amounts are not deemed compensation to Mr. Henderson. Thus, the payments would not be wages for purposes of FICA and FUTA taxes. Respondent contends that the payment of the personal expenses represented compensation to Mr. Henderson, and therefore petitioner is liable for the related employment taxes.

Whether a corporation's payment of a shareholder's personal expense is a constructive dividend or compensation is a question of fact. See Goldstein v. Commissioner, 298 F.2d 562, 566 (9th Cir. 1962), affg. T.C. Memo. 1960-276. Regardless of how an employer chooses to characterize payments made to employees, "the true analysis is whether the payments are for remuneration for services rendered." Spicer Accounting, Inc. v. United States, 918 F.2d 90, 93 (9th Cir. 1990).

When a corporation's earnings are due to the efforts of its employees, it is entirely appropriate for the corporation to make substantial payments to its employees. Langer v. Commissioner, T.C. Memo. 1990-268. In Smith v. Commissioner, supra, this Court determined that the payment of the shareholder's personal expenses constituted compensation payments instead of constructive dividends. The Court was persuaded by the fact that the corporation did not pay a salary to the shareholder and that the taxpayer's earnings arose solely from the shareholder's

efforts.  Id.

Petitioner concedes that Mr. Henderson should be classified as an employee for purposes of Federal employment taxes.  Mr. Henderson worked approximately 32 hours a week for petitioner during the years in issue.  The services performed by Mr. Henderson for petitioner during the years in issue were more than minor.  Mr. Henderson clearly performed regular and substantial services for the corporation.  In fact, the services Mr. Henderson performed for petitioner were integral to the corporation's operations and income-producing activities. Petitioner's other employees only assisted Mr. Henderson.

In 1995 and 1996, petitioner reported ordinary income on its Federal income tax returns of $217,985 and $380,559, respectively.  Mr. Smith testified that during the years in issue petitioner did not pay Mr. Henderson a salary.  Additionally, in 1995 and 1996 there were no distributions of dividends to Mr. Henderson in his capacity as sole shareholder.  It was Mr. Smith's testimony that "None of the profits, to my knowledge, were distributed during the years 1995 and 1996."  Mr. Smith also testified that "it was the decision of management that no distribution should be made."  However, the corporation paid personal expenses of Mr. Henderson in 1995 and 1996 totaling $96,766 and $143,221, respectively.  Respondent does not contest the reasonableness of these payments.  Mr. Henderson clearly

performed substantial services essential to petitioner, and the amounts of personal expenses paid on his behalf were compensation. Such compensation constitutes wages for purposes of FICA and FUTA taxes. Accordingly, we hold that petitioner is liable for the related FICA and FUTA taxes on the amounts deemed wages to Mr. Henderson.

Respondent contends that petitioner is liable for the addition to tax imposed by section 6656 for failure to make timely deposits of taxes with respect to both 1995 and 1996. Section 6656(a) imposes an addition to tax for failure to timely deposit any required tax in a Government depository, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The addition to tax is equal to the applicable percentage of the amount of the underpayment. Sec. 6656(a). The applicable percentage is 10 percent if the failure to deposit is more than 15 days. Sec. 6656(b)(1)(A)(iii).

Petitioner did not address the section 6656 failure to deposit additions to tax at trial. Petitioner presented no evidence to establish reasonable cause for its failure to deposit the required FICA and FUTA taxes. Accordingly, we hold that, with respect to the deemed wages to Mr. Henderson, petitioner is liable for the section 6656 additions to tax with respect to the FICA and FUTA tax liabilities for both years in issue.

Finally, we must decide whether petitioner is liable for the

accuracy-related penalties for 1995 and 1996. Section 6662(a) imposes an accuracy-related penalty in the amount of 20 percent of the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations. Negligence is any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Moreover, negligence is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Disregard includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. No penalty will be imposed with respect to any portion of any underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Sec. 6664(c). This determination is based on all the facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner presented no evidence regarding the section 6662(a) accuracy-related penalties. Petitioner failed to keep adequate records necessary to document the alleged loan transactions. Nor did petitioner provide other evidence to substantiate the alleged loan transactions. Petitioner failed to

meet its employment tax obligations on amounts that were compensation to Mr. Henderson. Accordingly, we sustain respondent's determination as to the section 6662(a) accuracy-related penalties.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered sustaining respondent's notice of determination.