117 T.C. No. 14

UNITED STATES TAX COURT

VETERINARY SURGICAL CONSULTANTS, P.C., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2500-99.                    Filed October 15, 2001.

P, an S corporation, distributed all of its net
income to A, its sole shareholder and president.  A
performs substantial services for P.  On his Forms 1040,
A reported P's net income as nonpassive income from an S
corporation.

R issued to P a Notice of Determination Concerning
Worker Classification Under Sec. 7436, determining that
A was an employee of P for purposes of Federal employment
tax.

Held:  A is an employee of P for purposes of Federal
employment tax pursuant to sec. 31.3121(d)-(1)(b),
Employment Tax Regs., because A is an officer who
performs substantial services for P and receives
remuneration for those services.

Held, further, P is not entitled to relief pursuant to sec. 530 of the Rev. Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2885, because P did not have a reasonable basis for not treating A as an employee.


Joseph H. O'Donnell, Jr., for petitioner.

Kathleen K. Raup, for respondent.


OPINION


JACOBS, Judge: This case is before the Court on a petition for redetermination of a Notice of Determination Concerning Worker Classification Under Section 7436 (Notice of Determination). It was submitted to the Court fully stipulated under Rule 122. The sole issue to be decided is whether Kenneth K. Sadanaga, D.V.M. (Dr. Sadanaga), is an employee of petitioner for the period at issue (each of the four quarters of 1994, 1995, and 1996) for purposes of Federal employment taxes.[1]

Rule references are to the Tax Court Rules of Practice and Procedure, and except as otherwise noted, section references are to the Internal Revenue Code in effect for the years at issue.

---

[1] For convenience, we use the term "Federal employment tax" to refer to taxes under secs. 3101-3125 (enacted as Federal Insurance Contributions Act (FICA), ch. 9, 53 Stat. 175 (1939)) and secs. 3301-3311 (enacted as Federal Unemployment Tax Act (FUTA), ch. 9, 53 Stat. 183 (1939)).

## Background

The stipulation of facts and the attached exhibits are incorporated herein. The stipulated facts are hereby found.

Petitioner is an S corporation that was incorporated in Pennsylvania on May 22, 1991. At the time the petition was filed, petitioner's principal place of business was in Malvern, Pennsylvania. Petitioner's only business is providing consulting and surgical services to veterinarians. Dr. Sadanaga is petitioner's sole shareholder and serves as its president, petitioner's only officer.

Since petitioner's incorporation, all of its income has been generated from the consulting and surgical services provided by Dr. Sadanaga to Veterinary Orthopedic Services, Ltd. (Orthopedic). During the period at issue, Dr. Sadanaga spent at least 33 hours per week providing consulting and surgical services on behalf of petitioner. He performed surgeries at the Veterinary Referral Center in Frazer, Pennsylvania, and consulted with veterinarians in their offices or his home.

Dr. Sadanaga is the only person with signature authority on petitioner's bank account. Dr. Sadanaga handled all of petitioner's correspondence and performed all administrative tasks on behalf of petitioner. Petitioner did not make regular payments to Dr. Sadanaga; rather, Dr. Sadanaga withdrew money from petitioner's bank account at his discretion.

Petitioner received a Form 1099-MISC, Miscellaneous Income, from Orthopedic reporting "non-employee compensation" during each of the quarters at issue. The Forms 1099-MISC reported that Orthopedic paid petitioner $125,152.63 in 1994, $225,469.24 in 1995, and $212,863 in 1996. Petitioner reported the amount reflected on the Forms 1099-MISC as its total gross receipts on its Form 1120S, U.S. Income Tax Return for an S Corporation, for 1994, 1995, and 1996.

On Forms 1120S, petitioner reported net income from its trade or business for 1994, 1995, and 1996 in the respective amounts of $83,995.50, $173,030.39, and $161,483.35. Petitioner paid these amounts to Dr. Sadanaga, and reported these amounts as Dr. Sadanaga's share of its income on Schedules K-1, Shareholders' Shares of Income, Credits, Deductions, etc., of the Forms 1120S. Petitioner reported on Schedules M-2, Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed, of the Forms 1120S, that the amounts it paid to Dr. Sadanaga were distributions other than dividend distributions paid from accumulated earnings and profits.

Petitioner did not issue a Form 1099-MISC or a Form W-2, Wage and Tax Statement, to Dr. Sadanaga for 1994, 1995, or 1996. Nor did petitioner file a Form 941, Employer's Quarterly Federal Tax Return, or a Form 940, Employer's Annual Federal Unemployment Tax

Return, for any quarter during the period at issue. On Schedules E, Supplemental Income and Loss, of Dr. Sadanaga's 1994, 1995, and 1996 Forms 1040, U.S. Individual Income Tax Returns, Dr. Sadanaga reported his share of petitioner's income (as indicated on the Schedules K-1) as nonpassive income from an S corporation.

Dr. Sadanaga was a full-time employee of Bristol-Myers Squibb Co. (Bristol-Myers). He reported wages from Bristol Myers of $91,212.18 in 1994, $95,891.15 in 1995, and $102,031.14 in 1996. In 1994, 1995, and 1996, Bristol-Myers withheld Social Security taxes from Dr. Sadanaga.

Respondent began an audit of petitioner's return for 1995 in May 1997. On October 22, 1997, Revenue Agent James Tepper, and petitioner's accountant, Joseph Grey, met to discuss the audit. Revenue Agent Orville Surla joined Revenue Agent Tepper and Mr. Grey to discuss whether Dr. Sadanaga was an employee of petitioner in 1995. Mr. Grey asserted that Dr. Sadanaga was not an employee of petitioner and that the distribution to him from petitioner represented his share of petitioner's net income. Mr. Grey objected to any assessment of Federal employment taxes against petitioner. Because Mr. Grey and Revenue Agent Tepper could not reach any agreement with respect to the Federal employment tax issue, the issue was referred to Revenue Agent Surla.

On March 16, 1998, respondent sent petitioner a 30-day letter, proposing adjustments to petitioner's Federal employment taxes for

each of the four quarters of 1994, 1995, and 1996.  On April 3, 1998, petitioner submitted to respondent a letter protesting the proposed adjustments.

On October 5, 1998, respondent sent petitioner a letter advising that there would be no change resulting from the audit of petitioner's Form 1120S for 1995.  On November 17, 1998, respondent issued to petitioner a Notice of Determination, in which respondent determined that (1) Dr. Sadanaga was an employee of petitioner for purposes of Federal employment taxes, and (2) petitioner was not entitled to "safe harbor" relief from these taxes as provided by section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885 (Section 530).  Attached to the Notice of Determination was a schedule detailing the amount of the proposed Federal employment taxes.  Thereafter, petitioner filed with the Court a timely petition seeking our review of respondent's Notice of Determination.

## Discussion

Petitioner contends that Dr. Sadanaga was not its employee and that it properly distributed its net income to Dr. Sadanaga, as its sole shareholder, pursuant to section 1366.  On the other hand, respondent contends that Dr. Sadanaga was an employee of petitioner because he was an officer of petitioner and performed substantial services on petitioner's behalf.

Sections 3111 and 3301 impose FICA (Social Security) and FUTA (unemployment) taxes on employers for wages paid to their employees. For Federal employment tax purposes, section 3121(d) defines an employee in part as any officer of a corporation. However, there is an exception to employee status for an officer who does not perform any services (or performs only minor services) and who neither receives nor is entitled to receive remuneration. Sec. 31.3121(d)-(1)(b), Employment Tax Regs. For Federal employment tax purposes, the term "wages" is defined as "all remuneration for employment".[2] Secs. 3121(a), 3306(b). The form of payment is immaterial, the only relevant factor being whether the payments were actually received as compensation for employment. Secs. 31.3121(a)-1(b), 31.3306(b)-1(b), Employment Tax Regs. Consequently, an officer who performs substantial services for a corporation and who receives remuneration in any form for those services is considered an employee, whose wages are subject to Federal employment taxes.

With respect to the case at hand, Dr. Sadanaga is an officer of petitioner, and therefore he is an employee of petitioner under the general rule of section 3121(d)(1). Additionally, Dr. Sadanaga performed substantial services for petitioner, working approximately 33 hours a week for petitioner. Indeed, he was the

---

[2] There are some exceptions to this definition that are not relevant to this case.

only individual working for petitioner. Tellingly, all of petitioner's income was generated from the consulting and surgical services provided by Dr. Sadanaga.

Petitioner contends that the amounts paid to Dr. Sadanaga were distributions of its corporate net income, rather than wages. Petitioner posits that as an S corporation it passed its net income to Dr. Sadanaga, as its sole shareholder, pursuant to section 1366. Petitioner's argument is flawed. Section 1366 permits use of S corporation passthrough items only in calculating tax liability under chapter 1, not tax liability under chapters 21 and 23--in which the Federal employment tax provisions for FICA and FUTA are located. Sec. 1366(a)(1); see also Ding v. Commissioner, 200 F.3d 587, 590 (9th Cir. 1999), affg. T.C. Memo. 1997-435; Catalano v. Commissioner, T.C. Memo. 1998-447.

Dr. Sadanaga performed substantial services on behalf of petitioner. The characterization of the payment to Dr. Sadanaga as a distribution of petitioner's net income is but a subterfuge for reality; the payment constituted remuneration for services performed by Dr. Sadanaga on behalf of petitioner. An employer cannot avoid Federal employment taxes by characterizing compensation paid to its sole director and shareholder as distributions of the corporation's net income, rather than wages. Regardless of how an employer chooses to characterize payments made to its employees, the true analysis is whether the payments

represent remuneration for services rendered.  Spicer Accounting, Inc. v. United States, 918 F.2d 90 (9th Cir. 1990); Joseph Radtke, S.C. v. United States, 895 F.2d 1196 (7th Cir. 1990).

Dr. Sadanaga's reporting the distributions as nonpassive income from an S corporation has no bearing on the Federal employment tax treatment of those wages.  He was petitioner's sole source of income.  And as petitioner's sole full-time worker he must be treated as an employee.  Spicer Accounting, Inc. v. United States, supra at 94-95.  Accordingly, we hold that Dr. Sadanaga is an employee of petitioner for the period at issue and, as such, the payments to him from petitioner constitute wages subject to Federal employment taxes.

Despite our determination that Dr. Sadanaga is an employee of petitioner, and that the payments to him from petitioner are wages subject to Federal employment taxes, Section 530 allows petitioner relief from employment tax liability if two conditions are satisfied.  Section 530(a)(1) provides in relevant part:

(1) In general.--If

>    (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period * * *, and

>    (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,

then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

Here, the first of the two conditions is satisfied. Petitioner did not treat Dr. Sadanaga as an employee during the period in issue. Since its incorporation, petitioner filed its tax returns reflecting all withdrawals by Dr. Sadanaga as distributions of petitioner's income, not wages.

However, the second condition of Section 530(a)(1) is not satisfied because petitioner had no reasonable basis for not treating Dr. Sadanaga as an employee. For purposes of Section 530(a)(1), a taxpayer is treated as having a reasonable basis for not treating an individual as an employee if the taxpayer's treatment of the individual was in reasonable reliance on judicial precedent, published rulings, technical advice with respect to the taxpayer, a letter ruling to the taxpayer, or longstanding recognized practice of a significant segment of the industry in which the individual was engaged. Section 530(a)(2).

Section 3 of Rev. Proc. 85-18, 1985-1 C.B. 518, provides several alternative standards that constitute safe havens in determining whether a taxpayer has a reasonable basis for not treating an individual as an employee. That revenue procedure provides that reasonable reliance on any one of the following safe havens is sufficient:

(A) judicial precedent or published rulings, whether or not relating to the particular industry or business in which the taxpayer is engaged, or technical advice, a letter ruling, or a determination letter pertaining to the taxpayer; or

(B) a past Internal Revenue Service audit (not necessarily for employment tax purposes) of the taxpayer, if the audit entailed no assessment attributable to the taxpayer's employment tax treatment of individuals holding positions substantially similar to the position held by the individual whose status is at issue * * *; or

(c) long-standing recognized practice of a significant segment of the industry in which the individual was engaged * * *.

A taxpayer who fails to meet any of the safe havens is still entitled to relief if the taxpayer can demonstrate, in some other manner, a reasonable basis for not treating the individual as an employee. Id.

Here, petitioner asserts that its position is supported by the following excerpt from Durando v. United States, 70 F.3d 548, 552 (9th Cir. 1995):

[It is] improper to treat income earned by a corporation through its trade or business as though it were earned directly by its shareholders, even when, as here, the shareholders' services help to produce that income. An S corporation's income passes through to its shareholders not because they helped to create that income, but because they are shareholders.

The excerpt relied upon by petitioner does not support petitioner's position. Respondent is not attempting to treat petitioner's income as though the income were earned directly by

Dr. Sadanaga.  Rather, the issue in this case is  whether the distributions paid to Dr. Sadanaga are wages paid to Dr. Sadanaga as an employee of petitioner.

Petitioner asserts that Durando v. United States, supra, holds that an S corporation shareholder is not an employee for purposes of deducting contributions to a Keogh plan.[3]  Petitioner misstates the holding of Durando v. United States.  Contrary to petitioner's assertion, the taxpayers in the Durando case did not claim to be employees of an S corporation.  Rather, such taxpayers were self-employed individuals, who in that capacity earned income reportable on Schedule C, Profit (or Loss) From Business or Profession, and were shareholders in several S corporations.  They claimed Keogh retirement plan deductions by adding their shares of income from the several S corporations to the amounts reported on their Schedules C and taking a deduction of 15 percent of the total.  The Commissioner disallowed the deductions attributable to the income from the S corporations.  The taxpayers' Keogh plans were not qualified plans established by the S corporations for their employees.  Citing section 1372, the court specifically noted that "S corporations can establish retirement plans for their employees, including those who are also shareholders" and that shareholders

---

[3]      Keogh plans are retirement plans for self-employed individuals.  A self-employed individual can deduct contributions to a qualified retirement plan up to a limit of 15 percent of his or her earned income.  Sec. 404(a)(3)(A), (8)(D).

"who provide services to an S corporation can be treated like employees and covered by that corporation's retirement plan." Durando v. United States, supra at 551. In sum, the Durando case does not provide a reasonable basis for not treating Dr. Sadanaga as an employee.

Petitioner also relies on Rev. Rul. 59-221, 1959-1 C.B. 225. Rev. Rul. 59-221, supra, holds that where a small business corporation elects under section 1372 not to be subject to Federal income tax, the amount of its income required to be included in each shareholder's gross income does not constitute "net earnings from self-employment" to such shareholders for purposes of the Self-Employment Contributions Act. That ruling, like the Durando case, deals solely with whether amounts a shareholder receives are derived from a trade or business carried on by the shareholder. In the case at hand, the issue is whether an officer is an employee of a corporation. Rev. Rul. 59-221, supra, makes no mention of either corporate officers or their Federal employment tax status. Therefore, the ruling does not provide a reasonable basis for treating Dr. Sadanaga other than as an employee.

Petitioner attempts to distinguish the facts in this case from cases holding that officers who performed substantial services for an S corporation are employees for purposes of Federal employment taxes. In Spicer Accounting, Inc. v. United States, 918 F.2d 90 (9th Cir. 1990), and Radtke v. United States, 895 F.2d 1196 (7th

Cir. 1990), the corporations characterized payments to their officer/shareholders as dividends rather than wages. In those cases, the courts found that the payments were in reality remuneration for employment and therefore subject to Federal employment taxes. Spicer Accounting, Inc. v. United States, supra at 93; Radtke v. United States, supra at 1197. Petitioner attempts to distinguish its case from the Spicer and Radtke cases because petitioner reported the payment to Dr. Sadanaga as a distribution of its net income, which Dr. Sadanaga reported as nonpassive income from an S corporation. But as stated previously, we find that the distributions were remuneration for services provided by Dr. Sadanaga. Thus, the "dividends" in the Spicer and Radtke cases are indistinguishable from the distributions in this case.

Petitioner also misstates the findings and conclusions of this Court in Joly v. Commissioner, T.C. Memo. 1998-361, affd. without published opinion 211 F.3d 1269 (6th Cir. 2000). Petitioner asserts that the corporation in the Joly case was compelled to treat income distributed to its shareholders as wages for the reason that the corporation and shareholders could not prove that any stock was issued to the shareholders. To the contrary, the Court found that part of the distributions to the two shareholders was compensation for services and, thus, constituted wages subject to Federal employment taxes. The balance of the distribution was

taxable under section 1368 as gain from the sale or exchange of property to the extent the distributions exceeded the shareholders' bases in their stock. The Court found that the shareholders had not established that their bases in their corporate stock at the beginning of the first taxable year before the Court was other than zero. But there was no question as to the shareholders' ownership of the stock of the corporation.

Petitioner next cites for support the following excerpt from Rev. Rul. 71-86, 1971-1 C.B. 285: "The president and sole shareholder, except for qualifying shares, of a closely held corporation is an employee of the corporation for [Federal] employment tax purposes, notwithstanding that he sets his own salary and prescribes his own duties." (Emphasis supplied by petitioner.) Petitioner contends: (1) Rev. Rul. 71-86, supra, exempts the sole shareholder of an S corporation from Federal employment taxes with regard to any income distributed to the "qualifying shares" shareholder, and (2) Dr. Sadanaga is such a shareholder because he holds all of the stock in the corporation. Petitioner again misreads the revenue ruling. The individual at issue in that revenue ruling owned all the stock of the corporation, except for qualifying shares. The revenue ruling did not define "qualifying shares". (We note, however, that the term generally refers to shares issued to an individual in order to qualify the individual as an incorporator or director where an

incorporator or director is required to own stock in the corporation. See, e.g., Roche's Beach, Inc. v. Commissioner, 35 B.T.A. 1087 (1937); 2 Fletcher Cyclopedia of the Law of Private Corporations, secs. 297-306 (perm. ed., rev. vol. 1998).) Here, Dr. Sadanaga owns all the shares of petitioner's stock, and there is no evidence that any shares were issued solely to qualify Dr. Sadanaga as a director or an incorporator. Rev. Rul. 71-86, supra, supports respondent's position; it does not provide an exception for petitioner.

Finally, petitioner argues that section 1372 prohibits a 2-percent shareholder of an S corporation from being treated as an employee of the S corporation. Section 1372, however, applies only to the provisions of subtitle A, income taxes, not subtitle C--in which Federal employment tax provisions are located.

In Rev. Rul. 73-361, 1973-2 C.B. 331, an officer/stockholder of a small business corporation performing substantial services as an officer of the corporation was held to be an employee of the corporation for purposes of Federal employment taxes. Rev. Rul. 73-361, supra, states:

> Neither the election by the corporation as to the manner in which it will be taxed for Federal income tax purposes nor the consent thereto by the stockholder-officers has any effect in determining whether they are employees or whether payments made to them are "wages" for Federal employment tax purposes.

In Rev. Rul. 74-44, 1974-1 C.B. 287, two sole shareholders of an electing small business corporation arranged to receive

dividends instead of reasonable compensation for services they performed. That revenue ruling held that the "dividends" constituted wages subject to Federal employment taxes.

In this case, respondent's position is supported by the plain language of the statute, the applicable Treasury regulations, published revenue rulings, and cases interpreting the applicable statutes. Petitioner's position is inconsistent with the weight of authority.

Petitioner argues that Dr. Sadanaga paid the maximum FICA tax required by law in each year at issue and that respondent is attempting to assess additional tax on Dr. Sadanaga in the form of withholding taxes. This argument is simply a "red herring". For Federal employment tax purposes, the taxable wage base applies separately to each employer. Thus, if an employee receives wages from more than one employer, the annual wage limitation does not apply to the aggregate compensation received. The employee however may be eligible for a credit or refund of the excess employee portion of the FICA tax that applies with respect to wages in excess of the applicable wage base. Secs. 31.3121(a)(1)-1(a)(3), 31.3306(b)(1)-1(a)(3), Employment Tax Regs.

We have considered all of petitioner's arguments, and, to the extent not specifically addressed, we find them unpersuasive or irrelevant.

_____

After the petition was filed in this case, Congress amended section 7436(a) to provide this Court with jurisdiction to determine the correct amounts of Federal employment taxes that relate to the Secretary's determination concerning worker classification. See Community Renewal Tax Relief Act of 2000 (CRTRA), Pub. L. 106-554, sec. 314(f), 114 Stat. 2763A-643. That amendment was made retroactive to the effective date of section 7436(a). CRTRA sec. 314(g), 114 Stat. 2763A-643.

The parties filed a Stipulation of Settled Issues setting forth the proper amount of Federal employment taxes owed by petitioner in the event we find that Dr. Sadanaga is petitioner's employee for purposes of Federal employment taxes (which we do). The amount so stipulated will be reflected in our decision document.

To reflect the foregoing,

Decision will be entered for respondent and in accordance with the parties' stipulations as to amounts.