T.C. Memo. 2003-48

UNITED STATES TAX COURT

VETERINARY SURGICAL CONSULTANTS, P.C., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10401-01.          Filed February 26, 2003.

<u>Joseph H. O'Donnell, Jr.</u>, for petitioner.

<u>Pamela J. Arthur-Gerlach</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  The petition in this case was filed in
response to a Notice of Determination Concerning Worker
Classification Under Section 7436 (notice of determination)
regarding petitioner's liabilities pursuant to the Federal
Insurance Contributions Act (FICA) and the Federal Unemployment
Tax Act (FUTA) for 1997 and 1998.  The issues for decision are:

(1) Whether Kenneth K. Sadanaga (Sadanaga) was an employee of petitioner for Federal employment tax purposes during 1997 through 1998 and, if so, (2) whether petitioner is entitled to relief under section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885, as amended (Section 530).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. For convenience, FICA and FUTA taxes are collectively referred to as employment taxes.

## FINDINGS OF FACT

Some of the facts were deemed stipulated pursuant to Rule 91(f); certain additional facts have been stipulated by the parties. The stipulated facts are incorporated in our findings by this reference.

<u>Petitioner's Organization and Operations</u>

Sadanaga has been a licensed veterinarian since 1985. He subsequently decided to incorporate his business on account of the protections afforded by limited liability, in that a corporation's debts are generally not assessed against individual shareholders. Petitioner was incorporated in Pennsylvania on May 22, 1991, and has at all relevant times operated as an S corporation. Petitioner's principal place of business was located in Pennsylvania, at the address of Sadanaga's personal

residence, during the years in issue and when the petition was filed in this case.

Since its organization, petitioner has provided consulting and surgical services to veterinarians. This activity was and is petitioner's only business and only source of income. Sadanaga has been the sole shareholder of petitioner from the time of its incorporation and throughout 1997 and 1998.

Sadanaga has at all times served as petitioner's president and only officer. Minutes from petitioner's annual meetings of directors and shareholders reflect that, for each of the years in issue, Sadanaga was elected president, vice president, secretary, and treasurer. Sadanaga was also petitioner's sole director. During 1997 and 1998, Sadanaga performed the following services for petitioner: (1) Solicited business on behalf of petitioner; (2) ordered and purchased supplies on behalf of petitioner; (3) entered into verbal and/or written agreements on behalf of petitioner; (4) oversaw the finances of petitioner; (5) collected moneys owed petitioner; (6) managed petitioner; (7) obtained clients for petitioner; (8) maintained customer satisfaction; (9) performed all bookkeeping services for petitioner; and (10) performed all surgical and consulting services to clients on behalf of petitioner. No other person provided any services to petitioner.

During the period in issue, petitioner rendered services to Veterinary Orthopedic Services, Ltd. (Veterinary Orthopedic). Sadanaga performed such services on behalf of petitioner pursuant to a service contract between petitioner and Veterinary Orthopedic dated January 1, 1992. Sadanaga provided consulting and surgical services on petitioner's behalf to other veterinarians at the Veterinary Orthopedic business office, at the offices of the individual veterinarians, and at petitioner's office (as maintained in Sadanaga's home). During 1997 and 1998, Sadanaga also worked approximately 25 to 30 hours per week as an employee of Bristol-Meyer Squibb Co., which relationship had begun in 1990.

In 1997 and 1998, petitioner did not maintain any type of business bank account. Rather, all moneys earned on behalf of petitioner were deposited into the joint account of Sadanaga and his wife, Amy Sadanaga. Sadanaga used funds maintained in this account to pay both business expenses of petitioner and his personal expenses as the need arose. Petitioner did not make regular payments at fixed times to Sadanaga for his services.

Petitioner's Tax Reporting

Petitioner timely filed Forms 1120S, U.S. Income Tax Return for an S Corporation, and related schedules, for each of the years 1997 and 1998. Petitioner reported ordinary income from its trade or business of $214,896.40 and $316,484.05 for 1997 and

1998, respectively. Petitioner claimed deductions for compensation of officers of $26,000 in 1997 and $40,000 in 1998; petitioner did not claim any deductions for salaries and wages. Schedules K-1, Shareholder's Share of Income, Credits, Deductions, etc., attached to the returns show $214,896.40 for 1997 and $316,484.05 for 1998 as the pro rata share of, and as a property distribution other than a dividend to, Sadanaga. Petitioner's Forms 1120S were signed by Sadanaga as president and by Joseph M. Grey (Grey) as preparer.

During 1997 and 1998, petitioner did not issue any Forms W-2, Wage and Tax Statement, to Sadanaga. Petitioner issued Forms 1099-MISC, Miscellaneous Income, to Sadanaga for 1997 and 1998 reporting respective payments of $26,000 and $46,000.

Petitioner did not file a Form 941, Employer's Quarterly Federal Tax Return, for any quarter in 1997 or 1998 or a Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for 1997 or 1998. Since petitioner's incorporation in 1991 to the present, petitioner has not filed any Federal or employer tax returns reporting any payments to Sadanaga as salary or wages for services provided by or on behalf of petitioner.

The Sadanagas' Tax Reporting

For each of the years 1997 and 1998, Sadanaga and his spouse filed a joint Form 1040, U.S. Individual Income Tax Return. On these returns, the Sadanagas reported as ordinary income from

"Rental real estate, royalties, partnerships, S corporations, trusts, etc." $214,896.40 and $322,484.05 for 1997 and 1998, respectively. For 1997, the foregoing amount is characterized on the attached Schedule E, Supplemental Income and Loss, as nonpassive income from Schedule K-1, and $26,000 is shown on Schedule C, Profit or Loss From Business, as gross receipts. For 1998, $316,484.05 is shown on Schedule E as nonpassive income from Schedule K-1; $6,000 is shown on Schedule E and on Form 4831, Rental Income, as rent; and $40,000 is shown on Schedule C as gross receipts.

The Notice of Determination

Respondent neither audited nor challenged petitioner's 1991, 1992, or 1993 Federal tax return regarding petitioner's treatment of Sadanaga as other than an employee. Prior to the audit underlying the instant case covering 1997 and 1998, respondent did audit petitioner for employment tax purposes for 1994, 1995, and 1996. That audit resulted in litigation of issues similar to those presented here. This Court issued an opinion thereon, in favor of respondent, in Veterinary Surgical Consultants, P.C. v. Commissioner, 117 T.C. 141 (2001), and the Court of Appeals for the Third Circuit affirmed sub nom. Yeagle Drywall Co. v. Commissioner, 54 Fed. Appx. 100 (3d Cir. 2002).

During pendency of the prior matter, on June 8, 2001, respondent sent to petitioner the notice of determination at

issue in this proceeding. The notice was based on a determination that Sadanaga was to be legally classified as an employee for purposes of Federal employment taxes and that petitioner was not entitled to relief from such classification pursuant to Section 530. Enclosed with the notice was a schedule setting forth petitioner's liabilities for FICA and FUTA taxes.

It is stipulated that, if the Court decides that Sadanaga is to be classified as an employee for Federal employment tax purposes for all periods in 1997 and 1998, the amounts of taxes due and owing are as set forth in the notice of determination. Conversely, if the Court decides that Sadanaga should not be classified as an employee for any of the periods in issue, the parties agree that petitioner owes no employment taxes.

## ULTIMATE FINDINGS OF FACT

Sadanaga, as president of petitioner, performed more than minor services and received remuneration therefor.

Petitioner did not have a reasonable basis for failing to treat Sadanaga as an employee during the years in issue.

## OPINION

I. Statutory and Regulatory Provisions

A. Subtitle C of the Internal Revenue Code

Subtitle C of the Internal Revenue Code governs payment of employment taxes. In particular, sections 3111 and 3301 impose taxes on employers under FICA (pertaining to Social Security) and

FUTA (pertaining to unemployment), respectively, based on wages paid to employees.  The term "wages" as used in these statutes generally encompasses "all remuneration for employment".  Secs. 3121(a), 3306(b).  "Employee" is defined for purposes of FICA taxes in section 3121(d), and, with modifications not germane here, section 3306(i) makes this definition applicable for purposes of FUTA taxes as well.  Section 3121(d) provides:

> SEC. 3121(d).  Employee.--For purposes of this chapter, the term "employee" means--
>
> (1) any officer of a corporation; or
>
> (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee; or
>
> (3) any individual (other than an individual who is an employee under paragraph (1) or (2)) who performs services for remuneration for any person--
>
>> (A) as an agent-driver or commission-driver * * *;
>>
>> (B) as a full-time insurance salesman;
>>
>> (C) as a home worker * * *; or
>>
>> (D) as a traveling or city salesman * * *;
>
> * * * [under specified conditions]; or
>
> (4) any individual who performs services that are included under an agreement entered into pursuant to section 218 of the Social Security Act.

Regulations promulgated under section 3121(d) clarify the scope of the inclusion in paragraph (1) for corporate officers, as follows:

> Generally, an officer of a corporation is an employee of the corporation.  However, an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is considered not to be an employee of the corporation. * * * [Sec. 31.3121(d)-1(b), Employment Tax Regs.]

Identical language is also included in regulations promulgated under section 3306.  Sec. 31.3306(i)-1(e), Employment Tax Regs.

B.  <u>Section 530 of the Revenue Act of 1978</u>

Section 530 operates in enumerated circumstances to afford relief from employment tax liability, notwithstanding the actual relationship between the taxpayer and the individual performing services.  The statute provides, in part:

> SEC. 530.  CONTROVERSIES INVOLVING WHETHER INDIVIDUALS ARE EMPLOYEES FOR PURPOSES OF THE EMPLOYMENT TAXES.
>
> (a) Termination of Certain Employment Tax Liability.--
>
> (1) In general.--If--
>
> (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and
>
> (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,

then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

(2) Statutory standards providing one method of satisfying the requirements of paragraph (1).-- For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

In specified circumstances, Section 530(e)(4) places the burden of proof on the Commissioner with respect to certain issues under Section 530, but this provision does not affect our analysis here.  Section 530(e)(4) applies to periods after December 31, 1996.  Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1122(b)(3), 110 Stat. 1767.  A taxpayer desiring to take advantage of Section 530(e)(4) first must establish a prima facie case that it was reasonable not to treat an individual as an employee and must have fully cooperated with the Secretary.  Because, as explained in detail below, petitioner

did not establish a prima facie case that its treatment of Sadanaga was reasonable, the burden of proof remains on petitioner.

II. Classification of Sadanaga for Employment Tax Purposes

    A. Status Under FICA and FUTA Provisions

In contending that Sadanaga should not be classified as an employee under the FICA and FUTA provisions of the Internal Revenue Code, petitioner focuses on Sadanaga's status as an S corporation shareholder and alleged lack of status as a common law employee. We briefly address these contentions seriatim.

    1. Contentions Regarding S Corporation Shareholders

Petitioner cites sections 1366, 1372, and 6037(c) and Durando v. United States, 70 F.3d 548 (9th Cir. 1995), presumably in support of an argument that S corporation shareholders should not be deemed employees. Sections 1366 and 6037(c) generally require that income items of S corporations be passed through to shareholders on a pro rata basis and reported by such shareholders in a manner consistent with treatment on the corporate return. These rules, however, pertain to calculation of income tax liability under subtitle A and have no bearing on computation of Federal employment taxes. Veterinary Surgical Consultants, P.C. v. Commissioner, 117 T.C. at 145. Furthermore, an employer cannot by the expedient of characterizing moneys paid in remuneration for services as distributions of net income,

rather than as wages, avoid FICA and FUTA liabilities. Id. at 145-146. Thus, as in Veterinary Surgical Consultants, P.C. v. Commissioner, supra at 145-146, and Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121, 128 (2002), we reject any suggestion that petitioner's passing through of its net income to Sadanaga precludes the finding of an employer-employee relationship between petitioner and Sadanaga. We likewise reject as not germane to the question before us petitioner's reliance on section 1372, addressing fringe benefits under subtitle A, and the reference to that statute in Durando v. United States, supra at 551. See Veterinary Surgical Consultants, P.C. v. Commissioner, supra at 147-148, 150.

    2. Contentions Regarding Common Law Employment

Petitioner contends that "employee" as used throughout section 3121(d) must be construed in a manner consistent with its use in section 3121(d)(2), such that the usual common law rules for determining existence of an employer-employee relationship are to be taken into account. In support of this position, petitioner quotes the following passage from Tex. Carbonate Co. v. Phinney, 307 F.2d 289, 291-292 (5th Cir. 1962):

> The statutory definition of "employees" as including officers of a corporation will not be so construed as to mean that an officer is an employee per se. Only such officers as work for it in fact are to be so included and, in determining whether an officer is an employee within the meaning of the statutes the usual employer-employee tests are to be applied. * * *

Petitioner further emphasizes that common law focuses on whether the alleged employer held the right to control the details of the work performed by the individual and argues that petitioner had neither the authority nor the ability to exert control over Sadanaga. There exist, however, at least two fatal defects in petitioner's arguments in this regard.

First, from the standpoint of statutory construction, the premise underlying petitioner's position finds no support either in the structure of the text or in the Tex. Carbonate Co. v. Phinney, supra, decision. Section 3121(d) is written in the disjunctive, with each of the four paragraphs expressly separated from the next by "or". Accordingly, each paragraph affords a separate and independent basis for deeming one engaged to perform services an employee. Individuals described in paragraphs (1), (3), and (4) of section 3121(d) are therefore frequently referred to as "statutory" employees, subject to FICA and FUTA regardless of their status under common law. See Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, supra at 126.

Moreover, Tex. Carbonate Co. v. Phinney, supra, is not authority to the contrary. Significant regulatory and statutory developments have occurred since the years in issue in that case. Given that sections 31.3121(d)-1(b) and 31.3306(i)-1(e), Employment Tax Regs., were promulgated after those years and that the FUTA definition of "employee" then in effect appears to have

contemplated a corporate officer who could be an independent contractor under common law, see, e.g., sec. 1607(i), I.R.C. 1939, the Court of Appeals' statements concerning common law rules "may no longer be relevant." Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, supra at 128 n.4. The opinion in Tex. Carbonate Co. v. Phinney, supra at 291, recognized that, regardless of the test purportedly being applied, "such officers as work for * * * [a corporation] in fact" are included as employees. The court also addressed the impact of an alleged absence of control in that case, as follows:

> Even though an absence of control is shown, and this as
> we have noted has not been done, the force of the
> factor is diminished to near de minimis by the fact
> that * * * [the service provider] himself was a member
> of the Board of Directors, a Vice President, and the
> executive of the Company in charge of its sales and the
> development of its markets. * * * [Id. at 292.]

Hence, critical components of the analysis in Tex. Carbonate Co. v. Phinney, supra, are consistent with the current regulatory approach to officers and contrary to petitioner's position.

Second, from a factual standpoint, even if the common law control factor were pertinent to our evaluation, petitioner has failed to establish a lack of control over Sadanaga in the performance of his services. As in Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, supra at 128-129, to accept petitioner's contentions in this regard would be the equivalent of disregarding the corporate form in which Sadanaga chose to

conduct his business.  Caselaw does not permit a taxpayer to use his or her dual role as a shareholder of and service provider to a corporation as grounds for ignoring the legal ramifications of the business construct so selected.  Moline Props., Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943); Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, supra at 129.

### 3.  Application of Section 3121(d)(1)

On the basis of the foregoing analysis, the application of section 3121(d)(1) is not precluded or limited here by considerations pertaining to Sadanaga's status as an S corporation shareholder or under the common law.  Section 3121(d)(1) and sections 31.3121(d)-1(b) and 31.3306(i)-1(e), Employment Tax Regs., specify that corporate officers are to be classified as employees if they perform more than minor services and receive or are entitled to receive remuneration.  The overwhelming weight of the evidence here shows that Sadanaga's activities vis-a-vis petitioner met these criteria. (Accordingly, considerations with respect to burden of proof do not affect our analysis on this point.)  Sadanaga at all relevant times served as petitioner's president and worked in all aspects of petitioner's consulting, surgical, and day-to-day business operations.  Sadanaga also obtained remuneration from petitioner as his needs arose.

Furthermore, although section 3121(d)(1) may be inapplicable to the extent that an officer performs services in some other capacity, i.e., as an independent contractor, petitioner has offered no convincing evidence that Sadanaga worked for or was engaged by petitioner in a capacity other than as an officer. See Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. at 129-130; Rev. Rul. 82-83, 1982-1 C.B. 151, 152. The only items referenced in the record that could suggest an independent contractor relationship are the Forms 1099-MISC reporting nonemployee compensation. These documents are uncorroborated by other evidence, such as a service agreement, and are entitled to little weight. See Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, supra at 130. Hence, we conclude that Sadanaga was an employee of petitioner for employment tax purposes, in accordance with section 3121(d)(1). (We also reject without further discussion petitioner's argument that Sadanaga falls within an exception applicable only to paragraph (3) of section 3121(d).)

B. Availability of Section 530 Relief

Section 530 affords relief from employment tax liability, notwithstanding an adverse classification, where the following three requirements are satisfied: (1) The taxpayer has not treated the individual, or any individual holding a substantially similar position, as an employee for any period; (2) the taxpayer

has consistently treated the individual as not being an employee on all tax returns for periods after December 31, 1978; and (3) the taxpayer has a reasonable basis for not treating the individual as an employee. Sec. 530(a)(1), (3). With respect to the case at bar, respondent has conceded that petitioner meets the first and second of the above requirements. Rather, the parties dispute whether petitioner had a reasonable basis for not treating Sadanaga as an employee.

Concerning the existence of a reasonable basis for purposes of Section 530(a)(1), Section 530(a)(2) sets forth three statutory safe havens. Reliance upon any of the circumstances enumerated in subparagraph (A), (B), or (C) of Section 530(a)(2) is deemed sufficient to establish the requisite reasonable basis.

Subparagraph (A) lists judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer. The amended petition alleges:

> The Petitioner did not treat its sole shareholder, Kenneth K. Sadanaga, as an employee during any part of 1997 and 1998, and reasonable basis exists for not treating Kenneth K. Sadanaga as an employee for the said periods based on a judicial precedent contained in the opinion of Texas Carbonate Company v. R.L. Phinney, 307 F.2d 289 (5th Cir.), cert denied, 371 U.S. 940 (1962) and based on the rules concerning the employer and employee relationship as outlined by the common law, as mentioned in Section 530 of the Revenue Act of 1978 and I.R.C. Section 3121(d)(2).

On brief, petitioner reiterates reliance on Tex. Carbonate Co. v. Phinney, 307 F.2d 289 (5th Cir. 1962), and cites as well to

Automated Typesetting, Inc. v. United States, 527 F. Supp. 515 (E.D. Wis. 1981), in support of the premise that petitioner reasonably looked to common law control concepts in classifying Sadanaga.

For the reasons previously discussed, Tex. Carbonate Co. v. Phinney, supra, does not afford a reasonable basis for disregard of the explicit rules of section 3121(d)(1) and sections 31.3121(d)-1(b) and 31.3306(i)-1(e), Employment Tax Regs. In affirming our opinion in petitioner's prior case, the Court of Appeals ruled:

> Texas Carbonate is not authoritative and it does not support the taxpayers' argument * * *. Thus, any reliance upon Texas Carbonate * * * was unreasonable, particularly in light of the subsequent decisions in Radtke * * * [Joseph Radtke, S.C. v. United States, 895 F.2d 1196, 1197-1198 (7th Cir. 1990)], and Spicer Accounting * * * [Spicer Accounting, Inc. v. United States, 918 F.2d 90, 94-95 (9th Cir. 1990)]. Indeed, Spicer Accounting rejected the taxpayer's argument that it had a reasonable basis for not treating its officer as an employee under Section 530 and should not be held liable. The court reasoned that Mr. Spicer was "for all practical purposes, the central worker for the taxpayer" and it declared that a "corporation's sole full-time worker must be treated as an employee." 918 F.2d at 95. [Yeagle Drywall Co. v. Commissioner, 54 Fed. Appx. at 104.]

Equally unavailing in this regard is Automated Typesetting, Inc. v. United States, supra. The District Court in that case simply evaluated the employment relationship of the involved individuals both through a common law analysis and through application of the provisions relating to corporate officers.

Id. at 519-522.  In deciding that the individuals qualified as employees under either rubric, the court did not repudiate the statutory treatment of corporate executives.  Id. at 520, 522; see also Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, supra at 129 n.5.

Moreover, even if we were to assume arguendo that the cited cases could offer a reasonable basis for treating an officer as a nonemployee, petitioner has failed to establish reliance on the claimed precedent as a factual matter.  To fall within the safe harbors of Section 530(a)(2), the taxpayer must have relied on the alleged authority during the periods in issue, at the time the employment decisions were being made.  The statute does not countenance ex post facto justification.  See 303 W. 42nd St. Enters., Inc. v. IRS, 181 F.3d 272, 277, 279 (2d Cir. 1999) (reversing and remanding because it was "unclear from the record whether * * * [the taxpayer] in fact relied on any specific industry practice in reaching its decision to treat its * * * [workers] as non-employee tenants, let alone whether such reliance was reasonable"); Select Rehab, Inc. v. United States, 205 F. Supp. 2d 376, 380 (M.D. Pa. 2002) ("The taxpayer must show that it relied upon those grounds [alleged as a reasonable basis], and that the reliance was reasonable."); W. Va. Pers. Servs., Inc. v. United States, 78 AFTR 2d 96-6600, at 96-6608, 96-2 USTC par. 50,554, at 85,919 (S.D. W. Va. 1996) ("The plain

meaning of section 530(a)(2) is that only evidence known to and relied upon by the taxpayer is relevant. Facts that are learned after the incorrect treatment of the employees * * * are not facts that a taxpayer relied upon in making its original decision regarding how to treat its employees.").

Until a few months before trial, petitioner did not purport to rely on Section 530 or the bases described therein and expressly disclaimed any dependence on the statute. Petitioner's present claim of reliance is not credible. The following colloquy transpired at trial between Sadanaga and counsel for respondent:

Q [Counsel for respondent]    Are you aware of the case of Texas Carbonate versus Phinney?

A [Sadanaga]    No.

Q    Have you ever discussed that case with anyone?

A    Yes.

Q    Who did you discuss the case with?

A    It was just mentioned to me by my accountant.

Q    Could you clarify "just mentioned to you"?

A    He had mentioned it as incorporating it as evidence within this.

Q    And that was today that you discussed it?

A    No.

Q    When did you discuss the case?

A    Two or three months ago.

Petitioner also called Grey, the accountant who advised petitioner and prepared petitioner's tax returns. Grey was permitted to testify in this case, despite petitioner's failure to list him as a witness in its trial memorandum, in the interest of a complete record and because respondent had been given sufficient warning and time to prepare.

Grey explained that he had based his determination that Sadanaga was not an employee on common law concepts pertaining to the employment relationship, particularly the element of control. As regards Section 530 and judicial precedent, Grey testified that he was unaware of the Tex. Carbonate Co. v. Phinney, supra, case until posttrial briefing, during the fall of 2001, in Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121 (2002). Hence, given the testimony that neither petitioner's sole shareholder and officer nor the accountant was familiar with the alleged judicial authority at the time petitioner decided to treat Sadanaga as a nonemployee for 1997 and 1998, petitioner has failed to establish that it relied on judicial precedent or, for that matter, on any of the other sources specified in Section 530(a)(2)(A). Accordingly, we conclude that subparagraph (A) does not aid petitioner here.

The same result obtains with respect to subparagraphs (B) and (C). The parties have stipulated that respondent did not audit petitioner for employment tax purposes prior to the

examination underlying <u>Veterinary Surgical Consultants, P.C. v. Commissioner</u>, 117 T.C. 141 (2001), which, as here, challenged petitioner's treatment of Sadanaga as a nonemployee.  Petitioner therefore cannot show reliance on a past audit under Section 530(a)(2)(B).  Likewise, petitioner has adduced no evidence of conventions in the consulting and surgical industry to establish longstanding industry practice under Section 530(a)(2)(C).  The safe havens of Section 530(a)(2) are therefore inapplicable on the record before us.

In seeking to establish a reasonable basis for Sadanaga's treatment apart from the safe havens, petitioner quotes from the following definition of "employment status" in Section 530(c)(2): "The term 'employment status' means the status of an individual, under the usual common law rules applicable in determining the employer-employee relationship, as an employee or as an independent contractor (or other individual who is not an employee)."  Petitioner apparently believes that the purported lack of common law control makes its treatment of Sadanaga reasonable within the meaning of Section 530 and that the above definition supports this view.

Again, however, petitioner's approach is contrary to controlling statutes and to the facts of this case.  As a matter of construction, Section 530(c)(2) defines employment status for purposes of certain provisions of Section 530 not germane here.

It does not purport to override or interpret the definition of "employee" in section 3121(d) and related regulations. Hence, Section 530(c)(2) does not render it rational for petitioner to have ignored the statutory mandate regarding corporate officers and to have taken a position that was not otherwise supported by authority. Petitioner also does not claim in actuality to have relied on Section 530(c)(2) in deciding not to treat Sadanaga as an employee in 1997 or 1998. We conclude and have found as a fact that petitioner did not have a reasonable basis for failing to characterize Sadanaga as an employee. Consequently, relief from employment tax liability is not available to petitioner under Section 530.

Lastly, in connection with Section 530, petitioner raises a due process argument. This issue has never been properly pled by petitioner. Rather, petitioner mentioned due process in its motion for leave to file an amended petition, did not allege a due process violation in the amended petition itself, and argued the matter only on brief. Generally, issues not properly raised prior to briefing will not be considered when to do so would prevent the opposing party from presenting evidence that might have been offered if the issue had been timely raised. DiLeo v. Commissioner, 96 T.C. 858, 891 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Shelby U.S. Distribs., Inc. v. Commissioner, 71 T.C. 874, 885 (1979). Here, however, even if we were to treat the due

process issue as appropriately before us, petitioner's position is without merit.

Section 530(e)(1) provides that the Internal Revenue Service "shall, before or at the commencement of any audit inquiry relating to the employment status of one or more individuals who perform services for the taxpayer, provide the taxpayer with a written notice of the provisions of this section." Small Business Job Protection Act of 1996 sec. 1122(a), 110 Stat. 1766. On brief, petitioner alleges that it learned of the existence of Section 530 only through the June 8, 2001, notice of determination, which postdated by a substantial margin the commencement in early 1999 of the underlying employment tax audit. Petitioner then states:

> The inaction of Respondent in not providing Petitioner with the required Section 530(e)(1) notice constitutes a serious Constitutional violation of due process rights guaranteed to Petitioner, and Petitioner moves this Court to allow it to recover its legal fees, since the conduct against Petitioner by Respondent is so egregious, and the basis of Respondent's reclassification of Dr. Sadanaga as an employee of Petitioner is totally unreasonable and without merit.

To the extent that petitioner's due process contentions take the form of a claim for litigation or administrative costs and fees under section 7430, such claim is premature. Rule 231(a)(2), as pertinent here, specifies that the appropriate time to seek recovery of legal costs follows service of a written

opinion.  See McWilliams v. Commissioner, 104 T.C. 320, 327 (1995); Groetzinger v. Commissioner, 87 T.C. 533, 548 (1986).

Furthermore, even if petitioner's allegations might be read as a plea encompassing other remedies, petitioner has failed to show that its situation satisfies the prerequisites for relief under the Due Process Clause.  As this Court has noted, even in a criminal context defendants are generally required to establish actual prejudice in order to obtain due process relief.  Riland v. Commissioner, 79 T.C. 185, 197-198 (1982) (involving a claimed denial of due process on account of delay in issuance of the subject deficiency notice).  The record in the instant case is devoid of evidence of such prejudice.  Although petitioner was made aware of Section 530 at least prior to filing its petition with the Court, petitioner failed therein to raise the statute. Nonetheless, petitioner was subsequently granted leave to file an amended petition specifically to place at issue its right to relief under Section 530.  The matter (of substantive relief under Section 530(a), not, as previously noted, of a due process violation based on Section 530(e)(1) notice procedures) therefore was properly before the Court at trial, and petitioner was afforded an opportunity to be heard.  Accordingly, no actual prejudice was sustained.

The above analysis is consistent with our recent jurisprudence on the notice provision contained in section

3463(a) of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 767. In Smith v. Commissioner, 114 T.C. 489 (2000), affd. 275 F.3d 912 (10th Cir. 2001), we considered this requirement that the Commissioner include on each notice of deficiency the last date for filing a petition with the Tax Court. We held that, where the Commissioner failed to place such date on the notice, but the taxpayers nonetheless received the notice and filed a petition in a timely manner, the notice was valid. Id. at 492. In so holding, we noted the absence of any delay prejudicial to the taxpayers' ability to petition the Court. Id. at 491-492.

Thus, failure to comply with certain procedural notice requirements does not rise to the level of a denial of due process where, as here, the taxpayer's opportunity to present its position is not prejudiced.

C. Conclusion

We hold that Sadanaga is an employee of petitioner pursuant to section 3121(d)(1) and that petitioner is not entitled to relief under Section 530. Accordingly, petitioner is liable for FICA and FUTA taxes for the periods in issue as set forth in respondent's notice of determination and relevant stipulations. Furthermore, given this result compelled by the facts before us, it is unnecessary to reach respondent's additional contention that petitioner should in any event be precluded from challenging

the employment taxes at issue under the doctrine of collateral estoppel.

　　　　To reflect the foregoing,

<u>Decision will be entered for</u>
<u>respondent and in accordance with</u>
<u>stipulations as to amounts</u>.